IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KEVIN STERK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PATH, INC., a Delaware corporation,<br><br>Defendant. | Case No. 1:13-cv-02330<br><br>[Hon. Samuel Der-Yeghiayan]<br><br>Action Filed: March 28, 2013 |

**PLAINTIFF KEVIN STERK'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

When Elizabeth Howell downloaded to her cell phone a software application developed by Defendant Path, Inc. ("Path"), Path uploaded the names and phone numbers of the contacts in her phone, stored that contact list on its servers, and used an SMS aggregator to send pre-written text messages to over 200 phone numbers from that contact list in the course of just thirty seconds. (Pl. SMF ¶¶ 9, 13, 16, 18, 29.)[1] The only issue presently before this Court is whether the equipment used by Path to send these text messages *en masse* to Ms. Howell's contact list was an Automatic Telephone Dialing System ("ATDS").[2] Attempting to deny the obvious, Path argues that it did not use an ATDS to send the text messages because the autodialer it used does not have the capacity to generate random or sequential numbers. But Path's assertion that equipment must have the ability to generate numbers randomly or sequentially in order to be

---

[1] "Pl. SMF" refers to Plaintiff Kevin Sterk's Local Rule 56.1 Statement of Material Facts, (dkt. 72-1).

[2] *See* Dkt. 33 at 5-6 (order allowing parties to conduct limited discovery and file dispositive motions on the ATDS issue). Thus, Path is correct in noting that questions such as whether Ms. Howell initiated the text messages or whether her contacts somehow consented to receive text messages from Path simply because their numbers were in her phone need not be reached at this juncture. (Dkt. 75 at 7.)

1

considered an ATDS relies on an interpretation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") that has been flatly rejected by the FCC.

The TCPA defines an ATDS as equipment that has the capacity "to store *or* produce" numbers to be dialed, 47 U.S.C. § 227(a)(1) (emphasis added), and the FCC has thus repeatedly held that equipment that automatically dials numbers from a stored list—rather than randomly or sequentially generated numbers—constitutes an ATDS. That is exactly what Path's autodialer did here; in the span of 30 seconds it sent text messages to numbers from a list stored on Path's servers (the 200 person contact list uploaded from Ms. Howell's phone), rather than to randomly or sequentially generated numbers.[3] This Court is bound by the FCC's determination that such equipment constitutes an ATDS, and must consequently deny Path's motion for summary judgment. In any event, even if this Court were not bound by the FCC's repeated rulings, the text of, the legislative intent behind, and the case law addressing the TCPA all support the FCC's interpretation that equipment need not randomly or sequentially generate numbers to constitute an ATDS. Finally, even if Path's autodialer did not fall within the statutory definition of an ATDS, summary judgment in Path's favor would still be unwarranted because Path's conduct violated the TCPA even if no ATDS was used.

I. **PATH'S ARGUMENT MUST BE REJECTED BECAUSE THIS COURT IS BOUND BY THE FCC'S REPEATED RULINGS THAT EQUIPMENT THAT AUTOMATICALLY DIALS NUMBERS FROM A STORED LIST IS AN ATDS.**

Path's motion for summary judgment rests on a single premise: that equipment must generate random or sequential numbers in order to fall within the statutory definition of an ATDS. As explained below, however, that premise is false—and Path's motion must therefore be

---

[3] While Path asserts that "[i]t has no interest in sending mass text-marketing messages to unknown recipients whose numbers are automatically generated," (dkt. 75 at 3), as a self-described member of the social-networking industry, it most definitely *does* have an interest in sending mass text-marketing messages to the contact lists of its current users.

denied—because (1) the FCC has repeatedly ruled that equipment need not generate random or sequential numbers to constitute an ATDS, and (2) this Court is bound by federal law to follow those FCC rulings.[4]

### A. The FCC has repeatedly ruled that equipment that automatically dials numbers from a stored list, rather than randomly or sequentially generated numbers, is an ATDS.

While Path asserts that in order to constitute an ATDS equipment must generate numbers (either randomly or sequentially), the FCC has repeatedly rejected that argument. Specifically, the FCC has ruled that "the statutory definition [of an ATDS] contemplates autodialing equipment that *either* stores *or* produces numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14014, 14091-92 (2003) (emphasis added) ("2003 Order"). Thus, equipment—like the autodialer used by Path—that dials numbers from a stored list rather than numbers produced randomly or sequentially falls within the statutory definition of an ATDS. Indeed, the FCC stated that "to exclude [certain equipment] from the definition of [ATDS] simply because it relies on a given set of numbers would lead to an unintended result." *Id*. at 14092.[5]

---

[4] Though not entirely clear, Path also appears to make some sort of judicial estoppel argument, asserting that Plaintiff admitted in an interrogatory response that equipment must generate random or sequential numbers in order to constitute an ATDS and therefore cannot contend otherwise on summary judgment. (Dkt. 75 at 10-11.) Even assuming that Plaintiff's interrogatory response takes the position Path says it does—which even a cursory review of the response, (dkt. 76-11 at 4-6), will immediately make clear that it does not—Path cites absolutely no authority suggesting that a litigant may not take a position allegedly inconsistent with a response to a contention interrogatory. To the contrary, the Seventh Circuit does not prohibit the taking of inconsistent positions within a single lawsuit, but rather limits judicial estoppel to taking a position inconsistent with one on which a litigant previously prevailed. *Astor Chauffered Limosine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990) ("The offense is not taking inconsistent positions so much as it is *winning* twice, on the basis of incompatible positions.") (emphasis in original).

[5] In that order, the FCC noted that while "[i]n the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily . . . , the evolution of

The FCC subsequently repeated this position in two other orders. First, in 2008, the FCC expressly rejected the argument "that [equipment] meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd 559, 566-67 (2008) ("2008 Order"). That argument—expressly rejected by the FCC—is *exactly* the argument made here by Path. (Dkt. 75 at 8) ("[The definition of an ATDS] confines potential TCPA claims to those involving specialized equipment that is capable of generating phone numbers randomly in any order, or generating numbers sequentially.").

In 2012, the FCC reiterated that the definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention *regardless of whether the numbers called are randomly or sequentially generated or come from calling lists*." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd 15391, 15392 n.5 (2012) (emphasis modified) ("2012 Order"). Interestingly, Path quotes this language in its summary judgment motion, emphasizing the phrase "has the specified capacity to generate numbers" to support its argument that number generation is a necessary element of an ATDS. But not only does Path's reading completely ignore the phrase "regardless of whether the numbers called . . . come from calling lists," it completely ignores the very next line of that FCC Order, which makes clear that number generation is *not* required: "The Commission has, for example, concluded that the scope of [the ATDS] definition

---

the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." 2003 Order at 14092. When enacting the TCPA, Congress anticipated that autodialers would evolve, and consequently gave the FCC "the flexibility to consider what rules should apply to future technologies as well as existing technologies." *Id*. at 14092 n.436 (quoting 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollings)).

4

encompasses hardware that . . . has the capacity to *store or produce* numbers and dial those numbers at random, in sequential order, *or from a database of numbers*." 2012 Order at 15392 n.5 (internal quotations omitted).[6]

In short, the FCC has expressly and repeatedly rejected Path's argument that an autodialer must generate random or sequential numbers to fall within the statutory definition of ATDS, instead ruling that equipment that automatically dials numbers from a stored list—such as the list of Elizabeth Howell's contacts uploaded to and stored on Path's servers—constitutes an ATDS. Further, one motivation behind the FCC's repeated rulings that equipment dialing lists of numbers rather than randomly or sequentially generated numbers "is to ensure that the prohibition on autodialed calls not be circumvented." 2012 Order at 15392 n.5 (quoting 2003 Order at 14091-93). But attempting to circumvent the TCPA's prohibition on autodialed calls is *precisely* what Path is trying to do here by arguing that its autodialer was not an ATDS because it did not generate random or sequential numbers. This Court should not—indeed, as explained below, cannot—allow Path to do so by ignoring the FCC orders addressing the definition of an ATDS.

---

[6] In a footnote, Path claims that the FCC orders "merely concluded that a specific type of equipment [a predictive dialer] was an ATDS." (Dkt. 75 at 10 n.9.) While it is true that some of the FCC orders ruling that equipment need not generate random or sequential numbers in order to be considered an ATDS involved predictive dialers, Path fails to explain the significance of that fact. As described by the FCC, a predictive dialer calls a given set of numbers programmed into it by a telemarketer. 2003 Order at 14091-92. With respect to the question of whether equipment that dials a given list of numbers rather than randomly or sequentially generated numbers is an ATDS (the only question at issue here), there is no relevant distinction between a predictive dialer dialing a list of numbers programmed into it and the equipment used by Path that dialed a list of numbers from a contact list uploaded from a user's phone and stored on Path's servers. Further, the relevant language in the 2012 Order discussed above is not limited to predictive dialers, instead referring to "any equipment" and "hardware" generally. 2012 Order at 15392 n.5.

B.     **Under the Hobbs Act, FCC determinations are binding on district courts.**

The Administrative Orders Review Act, also known as the Hobbs Act, grants federal appellate courts exclusive jurisdiction to determine the validity of final FCC orders. 28 U.S.C. § 2342(1). Thus, as the Seventh Circuit has instructed, FCC orders are binding on district courts because "the Hobbs Act prevents the district court from reviewing the validity of FCC regulations . . . ." *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010). *See also Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 97 (N.D. Ill. 2013) ("This Court is . . . bound by the FCC's orders, which are final and controlling"); *Griffith v. Consumer Portfolio Serv. Inc.*, 838 F. Supp. 2d 723, 726-27 (N.D. Ill. 2011) ("[T]he FCC's final orders are binding on this court under the Hobbs Act . . . . Our role is to apply the FCC's orders to the facts."); *Frausto v. IC Sys., Inc.*, No. 10-cv-1363, 2011 WL 3704249, at *2 (N.D. Ill. Aug. 22, 2011) ("The FCC's declaratory rulings on [the TCPA] bind me pursuant to the Hobbs Act . . . .").

Path's cursory treatment of the FCC rulings, (dkt. 75 at 8-9), ignores the binding nature accorded them by the Hobbs Act. Indeed—and quite incredibly—Path fails to even mention the Hobbs Act in its summary judgment motion. While Path does not expressly argue that the FCC rulings are not binding, it ignores the Hobbs Act at its own peril. *See, e.g., CE Designs*, 606 F.3d at 450 (characterizing the argument that court should not adhere to Hobbs Act and follow FCC rulings "pure bluster"); *Nelson v. Santander Consumer USA, Inc.* 931 F. Supp. 2d 919, 928-29 (W.D. Wisc. 2013) *vacated by stipulation of the parties*, No. 11-cv-307, 2013 WL 5377280 (W.D. Wis. June, 2013) (describing litigant's failure to acknowledge the Hobbs Act as "sloppy research" at best, and noting that arguing that the district court can disregard the FCC's interpretation of the ATDS definition comes "perilously close to violating Fed. R. Civ. P. 11").

Here, the FCC has—in multiple orders—repeatedly rejected Path's argument that

equipment needs to randomly or sequentially generate numbers in order to constitute an ATDS. These orders are binding on this Court under the Hobbs Act, and, consequently, Path's motion for summary judgment should be denied.

II. **EVEN IF THIS COURT WERE NOT BOUND BY THE FCC'S REPEATED RULINGS THAT EQUIPMENT NEED NOT RANDOMLY OR SEQUENTIALLY GENERATE NUMBERS TO CONSTITUTE AN ATDS, THE STATUTORY TEXT, CONGRESSIONAL INTENT, AND CASE LAW ALL SUPPORT THE FCC'S INTERPRETATION.**

While this Court, as discussed above, is bound by the FCC's repeated rulings that equipment that automatically dials a stored list of numbers—rather than randomly or sequentially generated numbers—constitutes an ATDS, it is worth noting that the text of the TCPA, the congressional intent behind its enactment, and the case law are all in accord with the FCC's rulings.

A. **The TCPA's text supports the FCC's rulings.**

The TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1). Because the statutory definition uses the disjunctive "or," equipment need not "produce" numbers to be dialed if it can "store" a list of numbers to be dialed. Further, the statutory phrase "using a random or sequential number generator" modifies only the term "produce" and not the term "store." This is because it makes no sense to talk about storing numbers using a number generator. A "generator" is "something that produces something," Merriam-Webster, http://www.merriam-webster.com/dictionary/generator (last visited Feb. 28, 2014), meaning that a "random or sequential number generator" is something that produces random or sequential numbers. Thus, while equipment can use a random or sequential number generator to "produce" numbers, it is nonsensical to talk about

using a number generator to "store" numbers.

In addition, aside from being nonsensical, reading "using a random or sequential number generator" to modify "store," would also render the term "store" superfluous. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute. . . . We are thus reluctan[t] to treat statutory terms as surplusage . . . .") (internal quotations and citations omitted). Any equipment using a number generator to store numbers would fall within the "produce" prong of the statutory definition because a random or sequential number generator must "generate" (*i.e.* "produce") the number before storing it. Consequently the text of the TCPA supports the FCC's rulings that equipment is an ATDS when it automatically dials numbers "regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 2012 Order at 15392 n.5.

  **B.**  **The Congressional intent behind the TCPA supports the FCC's rulings.**

Second, the Congressional intent behind the TCPA likewise supports the FCC's rulings. Path points to two of Congress's concerns in enacting the TCPA—telemarketers calling unlisted numbers, hospitals, or emergency organizations, and telemarketers tying up all lines of a business preventing outgoing calls—to suggest that Congress's intent was simply to prevent the random or sequential generation and dialing of numbers. (Dkt. 75 at 7-8.) But while that may have been part of the motivation behind the TCPA, as one court has noted "it certainly is not limited to such a purpose." *In re Jiffy Lube Int'l Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1261 (S.D. Cal. 2012). Rather, "the government sought to generally protect consumers' privacy and reduce the volume of telephone solicitations." *Id*. *See also Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012) (noting that in enacting the TCPA, Congress determined that "[u]nrestricted telemarketing" can be "an intrusive invasion of privacy"). Indeed, Congress noted

8

that autodialers at the time could dial as many as 1,000 telephone numbers each day, allowing telemarketers to call more than *seven million Americans every day*. S. Rep. 102-178, at 2. Congress's main concern and the problem they sought to alleviate in enacting the TCPA was the sheer volume of calls triggered by the growth of autodialers, which could dial multiple numbers in a short period of time without human intervention.

To solve this problem, Congress did not intend to draw an arbitrary line based on the inner workings of autodialers; it simply wanted to slow down the onslaught of calls plaguing Americans. And given that Congress enacted the TCPA in response to autodialers that could make 1,000 calls per day, it seems clear that they would be appalled by the equipment at issue here, which dialed over 200 numbers in less than thirty seconds. At that rate, such equipment could dial over 576,000 numbers per day, completely dwarfing the 1,000-call-per-day machines that originally motivated Congress to act. It is hard to believe that Congress intended *not* to include the equipment at issue here within the prohibitions of the TCPA.

### C. Case law involving the TCPA supports the FCC's rulings.

Finally, numerous cases—from this district and throughout the country—support the FCC's rulings that equipment need not generate numbers randomly or sequentially in order to fall within the statutory definition of an ATDS. *See, e.g., Griffith*, 838 F. Supp. 2d at 727 (N.D. Ill. 2011) ("Even assuming that [defendant's] equipment can only [automatically dial numbers stored in a file], and cannot generate and dial random or sequential numbers, it is still an 'automatic telephone dialing system.'"); *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (denying summary judgment on a TCPA claim because equipment could be an ATDS where it "receives numbers from a computer database . . . and then dials those numbers without human intervention," even though the

9

equipment could not generate a list of numbers) (internal quotations and citation omitted).

In contrast, most of the cases cited by Path do not hold that to constitute an ATDS an autodialer must have the capacity to randomly or sequentially generate numbers. Instead, those cases simply parrot the statutory text, including the express alternative language of storing numbers to be dialed. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("[T]he statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to *store or* produce telephone numbers to be called . . . .'") (emphasis altered); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010 (N.D. Ill. 2010) ("Congress included a definition that provides that in order to qualify as an [ATDS], the equipment need only have the capacity to *store or* produce numbers.") (emphasis altered); *Hunt v. 21st Mortg. Corp.*, No. 12-cv-2697, 2013 WL 5230061, *4 (N.D. Ala. Sept. 17, 2013) ("[T]o meet the TCPA definition of an [ATDS], a system must have the present capacity . . . to *store or* produce and call numbers from a number generator.") (emphasis altered); *In re Jiffy Lube*, 847 F. Supp. 2d at 1260 n.8 (S.D. Cal. 2012) ("[T]he machine only needs to have the capacity to *store or* produce numbers using a random or sequential number generator . . . .") (emphasis added).[7] Futhermore, the latter three cases were not decided in the context of summary judgment. Rather,

---

[7] Plaintiff's Counsel is very familiar with the issues in *Satterfield*, *Lozano*, and *Jiffy Lube*, as it was Class Counsel in all three cases. *Jiffy Lube*, contrary to supporting Path's reading of the TCPA, actually supports the FCC's rulings that an autodialer calling numbers from a stored list is an ATDS. In *Jiffy Lube*, the court expressly noted that "[defendant] failed to show that a machine which is fed a large list of telephone numbers and then dials them sequentially or randomly should not be considered an ATDS." 847 F. Supp. 2d at 1260 n.8. While the court in *Jiffy Lube* referred to *dialing* numbers sequentially or randomly, that should not be confused with *producing* numbers sequentially or randomly, which is what Path incorrectly asserts is required for an autodialer to constitute an ATDS. Any autodialer that dials a given list of numbers (such as the autodialer in *Jiffy Lube* or the equipment used by Path here) will dial the numbers on the list sequentially or randomly; there is no other way to do it. Even dialing numbers from a list according to a non-random algorithm (such as "dial every third number," or "dial every odd number") dials them in some sequence.

*Lozano* and *Jiffy Lube* were both decided in the context of a motion to dismiss, where the courts in those cases simply addressed the question of whether the plaintiffs sufficiently pleaded the use of an ATDS, and *Hunt* was decided in the context of a motion to compel, where no discovery regarding the alleged ATDS had been produced, so the court could not possibly have made a ruling that the functionality of the defendant's dialing system constituted an ATDS. Hence, those courts did not have the opportunity to apply the law to evidence (as this Court has), and thus the cases have limited applicability here.

The only two cases cited by Path that even arguably support the position that an ATDS must randomly or sequentially generate numbers, *Ibey v. Taco Bell Corp.*, No. 12-cv-0583, 2012 WL 2401972 (S.D. Cal. June 18, 2012), and *Stockwell v. Credit Management*, No. 30-2012-00596110 (Cal. Super. Ct. Oct. 3, 2012), fail to address or even acknowledge the relevant FCC orders or the binding effect to which they are entitled under the Hobbs Act, and consequently hold no weight here.[8] In short, while this Court is bound by the FCC's repeated rulings that an autodialer dialing a given list of numbers, rather than randomly or sequentially generated numbers, is an ATDS, even if it were not, the FCC's position is nevertheless supported by the text of the TCPA, Congressional intent, and case law.

### III. PATH'S CONDUCT VIOLATED THE TCPA EVEN IF NO ATDS WAS USED TO SEND THE PRE-WRITTEN TEXT MESSAGES.

Because the autodialer used by Path dialed a list of numbers—the numbers uploaded from the contact list on Elizabeth Howell's cell phone—it was an ATDS, and Path's motion for summary judgment should be denied. Yet even if the autodialer used by Path did not fall within

---

[8] Further, as a California state trial court decision, *Stockwell* "cannot properly be cited in support of a legal argument . . . ." *San Diego Cnty. Emps. Ret. Ass'n v. Cnty. of San Diego*, 151 Cal.App.4th 1163, 1184 (Cal. Ct. App. 2010).

the statutory definition of an ATDS, Path's conduct would *still* have violated the TCPA, precluding summary judgment in Path's favor.

The TCPA makes it unlawful to make any call to a cell phone "using any [ATDS] *or an artificial or prerecorded voice*." 47 U.S.C. § 227(b)(1)(A) (emphasis added). While the TCPA refers to an artificial or prerecorded "voice," voice is not limited to verbal communications. *See, e.g.,* Dictionary.com, http://dictionary.reference.com/browse/voice (last visited Feb. 21, 2014) (defining "voice" as, among other things, "expression in spoken or written words, or by other means"). Indeed, in an order clarifying that the TCPA applies to text messages, the FCC treated the words "voice" and "message" as interchangeable. 2003 Order at 14115 ("[U]nder the TCPA, it is unlawful to make any call using an [ATDS] or an artificial or prerecorded *message* to any wireless telephone number.") (emphasis added). Here, it is undisputed that Path designed several template text messages to send to its users' contact lists, which it stored on its servers. (Pl. SMF ¶¶ 13-14.) One of these messages was selected by Path's servers and sent to over 200 of Ms. Howell's contacts, including Plaintiff. (Pl. SMF ¶¶ 16, 29.) That message read: "Elizabeth Howell wants to show you photos on Path." (Pl. SMF ¶ 16.) Whether or not the equipment used by Path to send them constitutes an ATDS under the TCPA, Path's sending of these artificial, prewritten text messages to Ms. Howell's contacts (including to Plaintiff Kevin Sterk's cell phone) violates the TCPA's proscription against making a call to a cell phone "using . . . an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). Consequently, Path's conduct violated the TCPA *even if no ATDS was used*, and, for that reason alone, summary judgment in Path's favor should not be granted.

**IV.     CONCLUSION**

Because this Court is bound by the FCC's repeated rulings that an autodialer need not

12

generate random or sequential numbers to constitute an ATDS but rather can, as here, dial numbers from a stored list, Path's autodialer is an ATDS. Further, even if its autodialer were not considered an ATDS, Path's sending of artificial, prewritten text messages to cell phones violated the TCPA in any event. For both these reasons, Path's motion for summary judgment should be denied.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **KEVIN STERK**, individually and on behalf of all others similarly situated, |
| Dated: February 28, 2014 | By: /s/ Mark S. Eisen<br>One of Plaintiff's Attorneys |

Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
Mark S. Eisen
meisen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff Sterk and the putative Class*

**CERTIFICATE OF SERVICE**

      I, Mark S. Eisen, an attorney, hereby certify that on February 28, 2014, I served the above and foregoing ***Plaintiff Kevin Sterk's Response to Defendant's Motion for Summary Judgment***, by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 28th day of February 2014.

                                                        /s/ Mark S. Eisen