**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| KEVIN STERK, individually and on behalf of all others similarly situated, | Case No. 1:13-cv-02330 |
| Plaintiff, | Judge: Hon. Manish S. Shah |
| v. | Action Filed: March 28, 2013 |
| PATH, INC., a Delaware corporation, | |
| Defendant. | |

**PLAINTIFF KEVIN STERK'S RENEWED MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ..................................................................................................... iv

INTRODUCTION .......................................................................................................................1

THE TCPA ..............................................................................................................................3

THE FACTS ..............................................................................................................................5

I. Path sent text messages to consumers using its mobile application and the dialing equipment of marketing partner Twilio, Inc. ........................................................................5

II. Path's terms of service were uniform at all times during the class period....................................6

III. Facts applicable to Plaintiff Sterk................................................................................7

ARGUMENT ..............................................................................................................................8

I. Plaintiff satisfies the elements of Rule 23.........................................................................8

    A. The proposed Class is ascertainable.......................................................................8

    B. The numerosity requirement is satisfied. ...............................................................10

    C. The commonality requirement is satisfied. .............................................................11

        1. *Whether Path used an ATDS to transmit text messages to the proposed Class is a common question.*................................................................12

        2. *Whether the text messages sent to the Class were sent for informational or promotional purposes is a common question.* ......................................13

        3. *Whether Path's terms of service contained the requisite language to convey "prior express consent" to Path is a common question.*...................................14

        4. *Whether Path's acted "willfully or knowingly" is a common question* ..............15

    D. Plaintiff's claims are typical of the proposed Class.......................................................15

    E. The adequacy of representation requirement is satisfied. ...............................................16

    F. The proposed Class also meets the requirements of Rule 23 (b)(3)....................................18

1. *Common questions of law and fact predominate.* ................................................18

2. *The class action mechanism is superior to other available methods for the adjudication of this matter.* ...................................................................................19

CONCLUSION ........................................................................................................................20

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT CASES

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ...........................................................8

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012)....................................................3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................. 12, 14, 18-19

## UNITED STATES COURT OF APPEALS CASES

*Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682 (7th Cir. 2013) ...........................................14

*Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042 (7th Cir. 2007) .......................20

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ........................................................12

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)................................18

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012)...........................3-4

## UNITED STATES DISTRICT COURT CASES

*Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012).............................3

*Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ............................10

*Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240 (N.D. Ill. 2014)....................... *passim*

*Bridgeview Health Care Center Ltd. v. Clark*, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011) .........12

*Cellco Partnership v. Plaza Resorts, Inc.*, 2013 WL 5436553 (S.D. Fla. Sept. 27, 2013)..............7

*Chapman v. Wagener Equities, Inc.*, 2012 WL 6214597 (N.D. Ill. Dec. 13, 2012) ..........................1

*Chapman v. Wagener Equities, Inc.*, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014)...........................20

*Ellison v. Steven Madden, Inc.*, No. 11-cv-05935 (C.D. Cal. May 7, 2013) ............................... 17-18

*Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328 (N.D. Ill. 2006) ................................................ 18, 19

*Foreman v. PRA III, LLC*, 2007 WL 704478 (N.D. Ill. Mar. 5, 2007) ...............................9

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009)........... 3, 10

*G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) ...................9

*Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394 (N.D. Ill. 1987)......................................17

*Gomez v. PNC Bank, Nat'l Ass'n*, 2014 WL 3640798 (N.D. Ill. July 24, 2014) ..............................8

*Harris v. City of Chicago*, 1998 WL 59873 (N.D. Ill. Feb. 9, 1998) ...............................................16

*Harris v. comScore, Inc.*, 292 F.R.D. 579 (N.D. Ill. 2013) ........................................................ 14-15

*Heastie v. Cmty Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) .....................................11

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) .....................................19

*Holtzman v. Turza*, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009).....................................................10

*In re Cablevision Consumer Litig.*, No. 10-cv-4992, slip op. at *8 (E.D.N.Y. Mar. 31, 2014)........15

*In re Groupon, Inc. Securities Litig.*, 2014 WL 5245387 (N.D. Ill. Sept. 23, 2014) ........................12

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. Mar. 26, 2014)............ 3, 18, 19

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. Feb. 12, 2013)....................................3

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) .......................4

*Maxwell v. Arrow Fin. Servs., LLC,* 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) ............... 10-11, 17

*Moreno v. Napolitano*, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014) .............................................10

*Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424 (N.D. Ill. 2003) .................................16

*Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D. Ill. 2008) ............................................9

*Sengenberger v. Credit Control Serv., Inc.*, 2010 WL 1791270 (N.D. Ill. May 5, 2010) .................4

*Sengenberger v. Credit Control Serv., Inc.*, 2010 WL 6373008 (N.D. Ill. June 17, 2010) .............15

*Silbaugh v. Viking Magazine Svc's*, 278 F.R.D. 389 (N.D. Ohio 2012) ............................................3

*Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648 (N.D. Ill. 2006) .................................................10

*Starr v. Chicago Cut Steakhouse, LLC*, 2014 WL 7146061 (N.D. Ill. Dec. 15, 2014) .................19

*Sterk v. Path, Inc.*, 46 F. Supp. 3d 813 (N.D. Ill. 2014)............................................................ 2, 13

*Stern v. DoCircle, Inc.*, 2014 WL 486262 (C.D. Cal. Jan. 29, 2012) .............................................3

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 2012 WL 3835089 (N.D. Ill. Sept. 4, 2012) .......................4

*Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374 (N.D. Ill. 2011).....................18

*Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469 (C.D. Cal. 2012).......................................................15

## STATUTES

47 U.S.C. § 227.................................................................................................................... *passim*

## RULES

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

## ADMINISTRATIVE RULINGS

*In the Matter of Groupme, Inc./Skype Commc'ns*, 29 FCC Rcd. 3442 (2014)......................... *passim*

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830 (2012) ...........................................................................................................................13

## OTHER AUTHORITIES

5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.21[1] (3d ed. 2001).....................9

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS (4th ed. 2001).....................11

FED JUDICIAL CTR., MANUAL FOR COMPLEX LITIGATION § 21.222 (4th ed. 2004)............................9

Sarah Perez, *Video Texting App Glide is Going "Viral," Now Ranked Just Ahead of Instagram in App Store*, Techcrunch (Mar. 19, 2015), http://techcrunch.com/2013/07/24/video-texting-app-glide-is-going-viral-now-ranked-just-ahead-of-instagram-in-app-store/ ............................................1

Sarah Perez, *When Growth Hacking Goes Bad*, Techcrunch, http://techcrunch.com /2014/01/03/when-growth-hacking-goes-bad/ .................................................................................1

## INTRODUCTION

This lawsuit arises from a mobile marketing campaign that Defendant Path, Inc. ("Defendant" or "Path"), created to promote its online social networking mobile application. Beginning in June of 2012, Path collected the phone numbers stored in the cell phone address books of its users and secretly sent pre-written text message advertisements to those contacts, all without the recipients' consent or permission. In technology parlance, this technique is known as "spam-viting" or "growth hacking," and is sometimes used by mobile app companies to quickly inflate their user-bases for the purpose of increasing valuation and attracting investors.[1]

At this stage of the case, the focus is class certification. Plaintiff seeks certification of the following class under Fed. R. Civ. P. 23(b)(3):

> All persons in the United States whose cellular telephone numbers were collected by Path using the new user registration flow on Path version 3.0.x[2] and who received a text message sent by Path using Twilio's dialing equipment from March 6, 2013 through June 5, 2013.[3][4]

To resolve this case, the Court (or jury) will have to decide three issues: First, whether Path used an automatic telephone dialing system ("ATDS") to transmit the text messages to the proposed Class; second, whether Path obtained the requisite "prior express consent" from the Class Members;

---

[1] *See* Sarah Perez, *When Growth Hacking Goes Bad*, Techcrunch, http://techcrunch.com /2014/01/03/when-growth-hacking-goes-bad/ (noting that social network applications "are among the worst offenders" of text message growth hacking.) (last visited May. 8, 2015); *see also* Sarah Perez, *Video Texting App Glide is Going "Viral," Now Ranked Just Ahead of Instagram in App Store*, Techcrunch (May 8, 2015), http://techcrunch.com/2013/07/24/video-texting-app-glide-is-going-viral-now-ranked-just-ahead-of-instagram-in-app-store/ (referring to the action of an application accessing a user's contact lists and sending pre-written invitational text messages as "*spam-vit[ing]*").

[2] The "3.0.x" represents two versions of Path, iOS versions 3.0.1 and 3.0.4.

[3] Excluded from the Class are (1) Defendant and Defendant's employees and agents, (2) Defendant's attorneys; (3) the Judge to whom this case is assigned and the Judge's immediate family, (4) all persons who received a text message from Path sent as a result of the registration with Path of any of the persons excluded in parts 1 through 3, (5) persons who execute and file a timely request for exclusion from the Class, and (6) the legal representatives, successors, and assigns of any such excluded person.

[4] This definition differs from that in the Complaint. (*See* dkt. 1, ¶ 23.) Modifying the class definition as a result of discovery, however, is common in class action litigation. *See Chapman v. Wagener Equities, Inc.*, 2012 WL 6214597, at *5 (N.D. Ill. Dec. 13, 2012).

and third, whether Path's actions were "willful or knowing" such that damages should be trebled. Each question is susceptible to common proof, thus making this a textbook case for class certification.

As to the first issue, the Court has already found that Path used an ATDS when it transmitted the text message to Plaintiff Sterk,[5] and discovery has shown that Path used the same equipment to transmit the text messages to the remaining class members. Thus, this issue is susceptible to common proof. The second issue (consent) is also amenable to class-wide treatment. Path contends that it can rely on so-called "intermediary consent" by virtue of its users completing the Path registration process and providing it with the cell phone numbers in their address books. If Path is correct, it will prevail on the consent issue as to every member of the Class. Sterk responds to this argument in two ways: First, the intermediary consent defense is inapplicable if the Path spam-vite text messages are deemed to be promotional in nature, rather than purely informational; and second, even if the text messages were purely informational, Path still had to obtain prior express consent from text message recipients. The FCC has explained that this can occur by Path users agreeing to abide by Path's terms of service. These two issues, i.e. whether the text messages were informational vs. promotional and whether the language of Path's terms of service properly conveyed prior express consent to Path, both create common questions that will apply equally to Sterk and every other member of the putative Class. And if the Court reaches the third issue (willfulness), that question can be answered on a class-wide basis as well since whether Path acted "willfully or knowingly" when it violated the TCPA will be determined solely by reference to Path's own conduct.

In terms of the remaining Rule 23 criteria, the Class is easily ascertainable based on

---

[5] *See Sterk v. Path, Inc.*, 46 F. Supp. 3d 813 (N.D. Ill. 2014), *appeal denied at* 14-8020 (7th Cir. 2014).

documents produced in discovery and records in the Defendant's possession. Numerosity and typicality are also satisfied because the Class contains hundreds of thousands of individuals who, just like Sterk, received a text message sent by Path that encouraged them to download the Path app. The Plaintiff is also an adequate class representative, as his interests are aligned with those of the Class, and proposed Class Counsel have vigorously represented the Class from the start and have the resources to continue to do so. Finally, the predominance and superiority prongs of Rule 23(b) are also met, as the common questions outlined above predominate in this case, and the class action mechanism is far superior to thousands of individual lawsuits seeking, at most, $500 - $1,500.

In the end, and as shown below, this case falls neatly in line with other TCPA cases throughout the country and in this district that have been found appropriate for certification. *See, e.g.*, *Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240 (N.D. Ill. 2014); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009); *Kristensen v. Credit Payment Svc's, Inc.*, 12 F. Supp. 3d 1292 (D. Nev. 2014); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012); *Silbaugh v. Viking Magazine Svc's*, 278 F.R.D. 389 (N.D. Ohio 2012); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013); *Stern v. DoCircle, Inc.*, 2014 WL 486262 (C.D. Cal. Jan. 29, 2012).

As the proposed Class meets each of the requisites to certification under Federal Rules of Civil Procedure 23(b)(3), the instant motion should be granted.

## THE TCPA

Turning to the relevant law, Congress passed the TCPA in response to "voluminous consumer complaints," and to prohibit "intrusive nuisance calls" it determined were an invasion of privacy. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012); *see also Soppet v. Enhanced*

*Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) (noting that the TCPA was passed to combat the "expense and annoyance" of autodialed calls to consumers' cellular telephones). The TCPA is a means to combat the growing threat to privacy posed by the automated telemarketing practices at issue in this case, and states that:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . . .

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA applies with equal force to the transmission of text message calls as it does to making voice calls to cellular phones. *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010). As an affirmative defense to a TCPA claim, a defendant may assert that it obtained "prior express consent" to make telemarketing calls to the plaintiff. *See, e.g., Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 2012 WL 3835089, at *1 (N.D. Ill. Sept. 4, 2012). Thus, the burden is on Defendant to come forward with evidence showing that it "obtained the necessary prior express consent" to make the autodialed text message calls at issue. *Sengenberger v. Credit Control Serv., Inc.*, 2010 WL 1791270, at *4 (N.D. Ill. May 5, 2010).

Path in this case has asserted that it can avail itself of the so-called "intermediary consent" doctrine set forth by the FCC in a declaratory ruling that it issued on March 27, 2014. *See In the Matter of Groupme, Inc./Skype Commc'ns*, 29 FCC Rcd. 3442 (2014) ("*GroupMe* Order"). The FCC's order was issued after a group text messaging service called GroupMe petitioned the FCC for a declaratory ruling that it may rely on "prior express consent" conveyed through an intermediary (i.e., a GroupMe user) for transmitting non-telemarketing, purely informational text messages to third-parties. *Id.* ¶ 4.

The FCC ruled in GroupMe's favor, and decided that providers of group text messaging services may rely on consent obtained by third-party intermediaries if, and only if, (1) the text

messages are purely informational (as opposed to promotional), and (2) they specifically direct their intermediaries (here, the "intermediaries" are allegedly the Path users) to obtain the recipients' prior express consent to receive text messages from the service, and the intermediary specifically represents to the service that he or she has in fact obtained it. *Groupme* Order, 29 F.C.C. Rcd. at ¶¶ 7, 13, 14. The *Groupme* Order does not alter a company's duty to obtain "prior express consent" before transmitting text messages. *See id.* at ¶¶ 7, 12 ("the TCPA plainly requires a caller to obtain [] consent . . . [w]e stress that our clarification in no way mitigates GroupMe's duty (or that of any other caller) . . . to obtain prior express consent of the called party before placing an autodialed or prerecorded call to that party's wireless telephone number.").

## THE FACTS

I. **Path sent text messages to consumers using its mobile application and the dialing equipment of marketing partner Twilio, Inc.**

Path's spam-viting campaign began with it surreptitiously collecting the cellular telephone numbers of Class Members from its new users. Path accomplished this through its new user registration process in Path version 3.0.1 or 3.0.4 for mobile devices designed for Apple's iOS platform, which Path designed to maximize the amount of cellular telephone numbers it could collect for its advertising campaign. Path began by coaxing its users to give it access to the users' contacts list, which included every single cellular telephone number in the user's address book. (Declaration of Ari J. Scharg ("Scharg Decl.") Ex. 1, PATH 00076-00085.) If a Path user attempted to skip this step and press "next," Path again prompted the user to allow Path to upload that users' contact list to its servers. (*Id.* Ex. 1, PATH 00079, 00083; Ex. 2, December 11, 2013 Deposition of Michael DiCarlo ("1st DiCarlo Dep.") pp. 41-43.) Path, however, did not tell the user exactly *why* it wanted access to the users' address book. At the next screen in the registration process, all of the users' contacts were pre-selected by Path, and if the user did nothing except click the "next" button,

behind the scenes Path prepared to send text messages to every cellular telephone number in that users' contacts list, which Path had already collected and stored on its servers. (*Id.* Ex. 1, PATH 00079-80, 00083; Ex. 2, 1st DiCarlo Dep. pp. 83-90.) The only notice that Path provided to its users that text message transmissions had anything to do with the registration process was buried in tiny, "grayed-out" font appearing below certain contacts that cryptically stated "invite via SMS." (*Id.* Ex. 1; PATH 00079-00080.) Path certainly did *not* tell its users that it was going to send out text messages to their contacts.

Path had exclusive control over the transmission of the subject text messages in this case. First, Path authored the content of the text messages by pairing a pre-written text message it drafted with the name of a Path user and a website URL linked to the Path website. (Scharg Decl. Ex. 2, 1st DiCarlo Dep. pp. 83-90.) Path users never saw the content of this text message, and Path never told its users that their names would appear in the content of the text message. (*Id.* Ex. 1; PATH 00076-00085; Ex. 2, 1st DiCarlo Dep. p. 92; Ex. 4, February 25, 2015 Deposition of Michael DiCarlo ("2nd DiCarlo Dep.") p. 105.) Next, Path's software transferred the recipients' cell phone numbers along with the pre-written text message to Twilio via Twilio's API with instructions to send the text messages out. (*Id.* Ex. 2; 1st DiCarlo Dep. p. 83.) Following Path's instructions, Twilio's equipment then transmitted the text messages from a five-digit telephone number known as a shortcode, which Path controlled. (*Id.* ¶ 4.) Notably, Path used Twilio to transmit all of the text messages to the Class Members during the class period. (*Id.* Ex. 4, 2nd DiCarlo Dep. pp. 62-64; Ex. 7, Path, Inc.'s Response No. 7 to Plaintiff's Reissued First Set of Interrogatories.)

## II.     Path's terms of service were uniform at all times during the class period.

Path had a single version of its terms of service in place during the class period. (Scharg Decl. Ex. 1, PATH 00018-00024.) These terms of service: (1) made no mention whatsoever of text

messages, let alone that Path, Twilio, or anyone else would transmit text messages to anyone, (2) did not direct Path users to obtain consent from their contacts for any reason, let alone for Path to send those contacts text messages, and (3) did not notify its users that, by agreeing to the terms of service, they were somehow representing that they had obtained the prior express consent from their contacts to receive text messages from Path. (*Id.*)

### III.     Facts applicable to Plaintiff Sterk.

The facts related to Plaintiff Sterk are straightforward—he is just one of the many consumers nationwide who received a spam-vite text message from Path between March 6, 2013 and June 5, 2013. Specifically, on March 21, 2013, Sterk's cell phone[6] received the following text message from shortcode "59730":

> Elizabeth Howell wants to
> show you photos on Path.
> Get the app: https://path.com/i/2Mt2p6

 (Scharg Decl., Ex. 5, STERK 238.) Path sent this text message after it collected Sterk's cellular telephone number from Elizabeth Howell when she registered with Path on version iOS 3.0.1. (*Id.* Ex. 1, PATH0094.) In reality, Howell had no "photos" that she wanted to show to Sterk—rather, the content of this message was randomly chosen by Path. (*Id.* Ex. 2, 1st DiCarlo Dep. pp. 87-88.) The purpose of the spam-vite text message was to entice Sterk to click on the URL link and download the Path app. (*Id.*) Path wrote the content of the message, inserted Elizabeth Howell's name into the content of the message without her knowledge, and used Twilio's ATDS to transmit the message.

---

[6] Sterk has been the sole, regular user of his cellular telephone number since 2002, although his father, Mark Sterk, is the subscriber of record of the phone number, as it is part of a Verizon Wireless family plan. (Declaration of Mark Sterk ¶ 6.) Plaintiff Sterk, as the regular user of the number, has both standing to bring this TCPA claim, as well as the ability under the TCPA to provide (or withhold) consent to receive calls and text messages. *See Birchmeier*, 302 F.R.D. at 246-47 *and Cellco Partnership v. Plaza Resorts, Inc.*, 2013 WL 5436553, at *4-5 (S.D. Fla. Sept. 27, 2013).

As a result of this conduct, Plaintiff brought this lawsuit and now seeks certification of the proposed Class. The proposed Class meets each of Rule 23's requisites to certification, and thus, the instant motion should be granted in its entirety.

## ARGUMENT

## I.     Plaintiff satisfies the elements of Rule 23.

Class certification is appropriate when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied. *See* Fed. R. Civ. P. 23. Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) there are common questions of law and fact amongst class members (commonality); (iii) the proposed representative's claims are typical of those of the class (typicality); and, (iv) both the named-representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy). In determining whether class certification is appropriate, the court may consider the merits of the claim, "but only to the extent they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Gomez v. PNC Bank, Nat'l Ass'n*, 2014 WL 3640798, at *8 (N.D. Ill. July 24, 2014) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)). In this case, Plaintiff seeks certification of the proposed Class under Federal Rule of Civil Procedure 23(b)(3). In order to certify a class under Rule 23(b)(3) there must be (i) questions of law or fact common to the proposed class members which predominate over any questions affecting only individual members, and (ii) the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy.

## A.     The proposed Class is ascertainable.

Although not explicitly an element of Rule 23, a class must be ascertainable in order for

certification to be granted. *G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, 2010 WL 744262, at *2 (N.D. Ill. Feb. 25, 2010). A class definition is "sufficiently defined . . . if the class members can be ascertained based on objective criteria." *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 369 (N.D. Ill. 2008) (citing *Foreman v. PRA III, LLC*, 2007 WL 704478, at *5 (N.D. Ill. Mar. 5, 2007). The goal of this first inquiry is not to identify individual class members, but rather to ensure that, looking forward, "individual class members . . . receive the best notice practicable and have an opportunity to opt out." FED JUDICIAL CTR., MANUAL FOR COMPLEX LITIGATION § 21.222, at 270 (4th ed. 2004); *see also* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.21[1] (3d ed. 2001) ("The identity of class members must be ascertainable by reference to objective criteria.")

Here, class membership is straightforward and based on objective criteria: if an individual's cell phone number was sent a text message by Path through the text message aggregator Twilio between March 6, 2013 and June 5, 2013 that was triggered by a Path's collection of that cell phone number using the new user registration process in Path iOS version 3.0.x, then that person is a member of the proposed Class. Such individuals are easy to identify because their cell phone numbers appear in the transmission logs that are in the possession, custody or control of Path. (Scharg Decl. Ex. 6; Ex. 4, 2nd DiCarlo Dep. pp. 101-102, 128-130.) The transmission logs show not only the phone number that received the text message, but also the Class Member's name associated with the phone number (as it appeared in the Path user's contact list), as well the Path user's name and user ID from whom Path obtained the cell phone number. (*Id*.) These records can be cross referenced with records in Path's possession to confirm that Path used iOS version 3.0.x to collect the Class Member's phone numbers before Path sent them spam-vite text messages.[7]

---

[7] The Path user records contain detailed information, including (1) the name of the user; (2) the date and time the user registered with Path, and (3) the version of Path the user was running when he or she registered. (Scharg Decl. Ex. 1, PATH 0004-0010; PATH 0091-0095; Ex. 2, 1st DiCarlo Dep. pp. 100-

Comparisons of these two records will allow the Class to be ascertained using objective criteria.

Courts in this circuit have repeatedly found that a class is ascertainable when there is a list of each class member's phone number, and this Court should find likewise. *See, e.g., Birchmeier*, 302 F.R.D. at 248 (finding class sufficiently ascertainable by reference to call logs showing call recipients' phone numbers); *G.M. Sign, Inc.*, 2009 WL 2581324, at *4 (finding fax transmission logs sufficient to establish numerosity and ascertainability for class certification in a TCPA case); *Holtzman v. Turza*, 2009 WL 3334909, at *4 (N.D. Ill. Oct. 14, 2009) (same). Likewise, comparing records within a defendant's possession is also something that is routinely done. *See Moreno v. Napolitano*, 2014 WL 4911938, at *6 (N.D. Ill. Sept. 30, 2014) (collecting cases and noting that "the need to review individual files to identify [class] members" is not a reason to deny certification); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *5 (S.D. Cal. Apr. 9, 2014) (finding it appropriate to review Defendant's files to ascertain class membership).

Thus, the proposed Class is ascertainable.

### B. The numerosity requirement is satisfied.

Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific number required, nor are the plaintiffs required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Generally, "[t]he court is permitted to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC,* 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004).

Here, transmission logs produced by Path show that between March 6, 2013 and March 28,

---

102.) Path has the ability to run queries on this data to filter it. (*Id.* Ex. 2, 1st DiCarlo Dep. pp. 64-65.) Thus, it is entirely possible to cross-reference this data with the transmission logs to identify Class Members.

2013, which constitutes roughly the first one-third of the class period, Path transmitted text messages to approximately 388,000 individuals. (*See* Scharg Decl. ¶ 8.)[8] To be clear, of this number, only those individuals who received a text message from Path that originated from the new user registration process in Path iOS versions 3.0.1 and 3.0.4 are members of the Class. Based on documents produced by Path, approximately 70% of its user base at the end of 2012 was using iOS platforms, and the number of new Path users was continuing to grow. (Scharg Decl. Ex. 1, PATH 001077-001079.)[9]

Although the precise size of the Class is not known, it is clear that the Class numbers in the hundreds of thousands: over 270,000 class members for the first month of the class period and— assuming a similar growth rate for last two-thirds of the class period—over 800,000 in total. Thus, there is no doubt that the proposed class is sufficiently numerous. *See Heastie v. Cmty Bank of Greater Peoria*, 125 F.R.D. 669, 674 (N.D. Ill. 1989) (classes numbering in the thousands "clearly" satisfy the numerosity requirement); ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 3:5, 243–46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met."). Accordingly, the proposed Class satisfies the numerosity requirement.

### C. The commonality requirement is satisfied.

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality requires that the claims of the class "depend upon a common contention . . . of such a

---

[8] Path has indicated that it has additional records showing the text message transmissions beyond March 28, 2013. (Scharg Decl. Ex. 4, 2nd DiCarlo Dep. pp. 128-130.)

[9] As described in Section II.A *supra*, a comparison of the transmission logs to Path's user records will show which cellular telephone numbers Path harvested through the iOS 3.0.x new user registration process.

nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Commonality is present where a "common nucleus of operative fact" exists, even if as to one question of law or fact, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and is often found where "defendants have engaged in standardized conduct toward members of the proposed class . . ." *Bridgeview Health Care Center Ltd. v. Clark*, 2011 WL 4628744, at *3 (N.D. Ill Sept. 30, 2011) (internal quotations omitted). The question of commonality is a relatively low and easily surmountable hurdle. *In re Groupon, Inc. Securities Litig.*, 2014 WL 5245387, at *1 (N.D. Ill. Sept. 23, 2014).

The claims of Plaintiff and the Class in this case are based upon three common questions: (1) whether Path transmitted the spam-vite text messages to the proposed Class using an ATDS; (2) whether Path obtained prior express consent from the Class Members; and (3) whether Path's TCPA violations were "willful or knowing" such that damages should be trebled. The second common question (consent) contains two parts: First, the threshold question of whether the spam-vite text messages at issue were "purely informational" in nature or sent for a promotional purpose, and second, if the text messages are deemed to be "purely informational," whether Path's uniform terms of service satisfied its obligation to obtain express consent.

### 1. Whether Path used an ATDS to transmit text messages to the proposed Class is a common question

One of the three central issues in this case is whether Path used an ATDS to send text messages to the Class. The Court has already held that Path used an ATDS to send the text messages to Plaintiff. *See Sterk*, 46 F. Supp. 3d 813. Discovery has demonstrated that Path used this same equipment to send text messages to the proposed Class. (Scharg Decl. Ex. 4, 2nd DiCarlo Dep. pp. 62-64.) Thus, the proposed Class Members share this common fact and legal finding at the

center of this case.

      **2.**      **Whether the text messages sent to the Class were sent for informational or promotional purposes is a common question.**

With regards to Path's affirmative defense of consent, the first question the Court must necessarily resolve is whether the text messages at issue were informational, or contained a promotional component. If the text messages are not "purely informational," then the *Groupme* Order is inapplicable and Path cannot rely on the "intermediary consent" defense. *See Groupme* Order, 29 F.C.C. Rcd. at ¶¶ 4, 7.[10]

  An examination of the text messages—as well as Path's reasons and motivations for sending them—will determine whether they were promotional or informational in nature. Although the content of the text messages contained small non-material variations, they were all identical in the relevant aspects. Specifically, they contained three main ingredients: (1) the Path user's name, or alternatively, the recipient's first name, (2) a "call to action" to download the Path app, and (3) a URL hyperlink that led Class Members to the download page for the Path app. (Scharg Decl. Ex. 1, PATH 00783-00784.) The text messages read, for example, "[user name] wants to chat with you on Path [URL]," "[user name] wants to share photos with you on Path [URL]," and "Hey [recipient name], check out my photos and videos on Path. It's the best way to stay connected with family & close friends [URL]."[11]

Since all the text messages were substantively identical (and, in fact, were all pre-written by Path), the issue of whether they were promotional or informational presents a common question that

---

[10] If the text messages are deemed to contain a promotional component, the only way for Defendant to avoid liability is to show that it obtained prior express *written* consent from the proposed Class, something it cannot do. *See Groupme* Order, 29 F.C.C. Rcd. at ¶¶ 4, 7; In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1838 (2012) (holding that prior written express consent must be obtained to transmit telemarketing text messages.)

[11] All of the variations of text messages written by Path appear at Exhibit 1 to the Scharg Decl. at PATH 000783-000784.

is easily resolvable on a class-wide basis. In fact, the Seventh Circuit has noted in the context of

TCPA litigation that whether a fax transmission is considered "advertising" is a common question.

*Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). This common question, by itself,

is sufficient to make this case suitable for class-wide adjudication, as Rule 23 only requires the

existence of a single common question. *Dukes*, 131 S. Ct. at 2556 (holding that for purposes of

commonality, "[e]ven a single [common] question will do").

### 3. Whether Path's terms of service included the requisite language to convey "prior express consent" to Path is a common question.

The question of whether Path obtained "prior express intermediary consent" is common for

second reason—it will be determined based on the applicability of Path's own terms of service. In

the *Groupme* Order, the FCC found that the GroupMe users—through their acceptance of

GroupMe's terms of service—obtained and conveyed the text message recipients' prior express

consent to GroupMe. *See Groupme* Order, 29 F.C.C. Rcd. ¶¶ 13-14. Hence, the key inquiry will be

whether Path's terms of service contained language that directed its users to obtain prior express

consent from the text message recipients, and, in turn, transferred that consent to Path.

This question, too, will result in a common answer: the Court need only examine Path's

terms of service to determine if they contained the requisite language to obtain prior express

consent. As numerous other courts have found, an analysis of uniform terms of service present

common questions well suited for class certification. *Harris v. comScore, Inc.*, 292 F.R.D. 579, 585

(N.D. Ill. 2013) (finding commonality met when court had to undertake analysis of uniform

contractual language); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012) (finding

commonality met when all class members were owners of life insurance policies that contained

uniform language); *In re Cablevision Consumer Litig.*, No. 10-cv-4992, slip op. at *8 (E.D.N.Y.

Mar. 31, 2014) (finding commonality met when each class member is bound by the same terms of

14

service). If the Court finds that Path's terms of service were insufficient to convey "intermediary" consent to Path, then Path's prior express consent defense will fail as to each and every class member. But the Court need not determine the sufficiency of Path's terms of service now—rather, it need only determine whether an answer to this question will resolve the issue for the entire proposed Class in one stroke.

### 4.  Whether Path acted "willfully or knowingly" is a common question.

Finally, whether Path acted "willfully or knowingly" when it transmitted the text messages to Plaintiff and the Class is another common question because it depends solely on Path's own conduct and level of knowledge. Indeed, the "willful or knowing" standard is satisfied where the defendant has knowledge of the facts that constituted the offense. *Sengenberger v. Credit Control Serv., Inc.*, 2010 WL 6373008, at \*1 (N.D. Ill. June 17, 2010). Here, Sterk will prove that Path's actions were willful by demonstrating that: (1) spam-viting is a method used by unscrupulous start up companies to exponentially increase their user bases; (2) Path intentionally programmed and designed its app to send the spam-vite text messages; and (3) even after receiving numerous consumer complaints, Path continued sending the text messages at issue. Again, the Court need not decide whether Path's conduct was willful at this time, but that determination—when made at summary judgment or trial—will apply to every member of the Class equally.

In the end, regardless of how these questions are ultimately answered, they will resolve all dispositive issues on a class-wide basis. Accordingly, the commonality requirement is satisfied.

### D.  Plaintiff's claims are typical of the proposed Class.

Rule 23 next requires that Plaintiff's claims be typical of those of the other Class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to commonality and is satisfied if Plaintiff's claims arise from "the same event or practice or course of conduct that gives

rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). Notwithstanding, the existence of factual differences will not preclude a finding of typicality; the claims of a named plaintiff need only share "the same essential characteristics" as those of the class. *Id.* Indeed, "[s]imilarity of legal theory is more important than factual similarity. . . ." *Id.* (quoting *Harris v. City of Chicago*, 1998 WL 59873, at *5 (N.D. Ill. Feb. 9, 1998)).

In this case, Plaintiff and the Class were each subjected to Path's common course of conduct. That is, Path sent each Class member (including Plaintiff) a text message it authored from the same dialing equipment urging them to download the Path app and join the social network. In addition, Path collected each Class Member's cellular telephone number through the same process within the new user flow for Path iOS version 3.0.x. Finally, as a result of Defendant's conduct, Plaintiff and the other members of the Class suffered substantially the same harm in the form of the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text messages, thus entitling them to an identical calculation of statutory damages under the TCPA. *See* 47 U.S.C. § 227(b)(3)(B). As such, by pursuing his own claims, Plaintiff will necessarily advance the interests of the Class in satisfaction of Rule 23(a)(3)'s typicality requirement.

### E.    The adequacy of representation requirement is satisfied.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means that both a proposed class representative and his or her counsel have the ability to "zealously represent and advocate on behalf of the class as a whole." *Maxwell*, 2004 WL 719278, at *5. The proposed class representative must not have claims that are "antagonistic or conflicting . . . with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous

advocacy." *Id.* (internal quotations omitted). Additionally, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Plaintiff Sterk has the same interests as the other members of the Class—he received a spam-vite text message from Defendant on his cellular phone as a result of Defendant's uniform course of unlawful conduct. Therefore, like the other members of the Class, his interests lie in ensuring that Defendant's unlawful conduct does not continue in the future and that he and the other members of the Class recover the statutory damages and injunctive relief to which they are entitled. Plaintiff has no interests antagonistic to those of the other members of the Class. Further, Plaintiff has vigorously pursued these common interests and will continue to do so. (Scharg Decl. ¶ 13.)

In addition, he is represented by extremely qualified counsel. Proposed Class Counsel Jay Edelson, Rafey S. Balabanian, Ari J. Scharg and John C. Ochoa of Edelson PC have extensive experience in class actions of similar size, scope, and complexity to the instant action,[12] and have the resources necessary to see this litigation through to its conclusion. (Scharg Decl. ¶¶ 10-12.) Edelson PC "[has] pioneered the application of the TCPA to text-messaging technology" and have litigated "some of the largest consumer class actions in the country on this issue." *Ellison v. Steven Madden, Inc.*, No. 11-cv-05935 (Dkt. 73 at 9) (C.D. Cal. May 7, 2013); *see also Birchmeier*, 302 F.R.D. 240 (achieving adversarial certification of a TCPA class comprised of millions of members); *Kristensen*, 12 F. Supp. 3d 1292 (achieving adversarial certification of a TCPA class of nearly 100,000 consumers who received alleged unsolicited text messages); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009) (reversing the lower court and agreeing that text

---

[12] The Edelson PC Firm Resume is attached to the Scharg Decl. as Ex. 8.

message advertisements sent on behalf of publishing house Simon & Schuster constituted "calls" under the TCPA).

In short, proposed Class Counsel has the expertise and resources necessary to conduct litigation of this nature, have already diligently investigated the claims at issue in this action and dedicated substantial resources to the case—and will continue to do so throughout its pendency. Accordingly, Jay Edelson, Rafey S. Balabanian, Ari J. Scharg and John C. Ochoa of Edelson PC should be appointed Class Counsel.

**F.      The proposed Class also meets the requirements of Rule 23(b)(3).**

Plaintiff seeks class certification under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331–32 (N.D. Ill. 2006). This case easily meets both of these requirements.

**1.      Common questions of law and fact predominate.**

Rule 23(b)(3)'s "predominance requirement looks to whether the proposed class is 'sufficiently cohesive' to warrant 'adjudication' by representation." *Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. 2011) (citing *Dukes*, 131 S. Ct. at 2566). The inquiry requires courts to identify "the substantive issues that will control the outcome, assess[ ] which issues will predominate, and then determin[e] whether the issues are common to the class." *Id.* (internal quotations omitted)

Here, there are three common questions that predominate in this litigation: (1) whether the equipment Path used to transmit text messages to the Class was an ATDS, (2) whether the text

messages themselves were promotional or informational, and, if the text messages were informational, whether Path's terms of service were sufficient to "transfer" any Class Member's prior express consent to it; and (3) whether Path acted "willfully or knowingly." These three issues predominate, as their resolution will decide, in one stroke, Path's liability, the applicability of Path's affirmative defense of intermediary consent, and whether it must pay Plaintiff and the Class treble damages. *See, e.g.*, *Kristensen*, 12 F. Supp. 3d at 1307 (finding common issues predominated when they could be decided for entire class based on common proof).

In addition, the Class Members suffered the same injury, have identical claims based on the same legal theory, (i.e., a violation of the TCPA), and, if they prevail, are entitled to the same amount of statutory damages. In this situation, the predominance requirement is undoubtedly met. *See Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008); *Starr v. Chicago Cut Steakhouse, LLC*, 2014 WL 7146061, at *11 (N.D. Ill. Dec. 15, 2014) (finding predominance met where damages can be easily calculated and are the result of a class-wide injury.)

## 2. The class action mechanism is superior to other available methods for the adjudication of this matter.

Rule 23(b)(3) further requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. *Fletcher*, 245 F.R.D. at 334. The instant class action is superior to other available methods for litigating Plaintiff's and the other Class Members' claims. Absent class treatment in this case, each individual Class Member would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendant. Moreover, there is no indication that members of the Class have a strong interest in individual litigation given the small amount of damages likely to

19

be recovered relative to the resources needed to prosecute such an action. *See Pastor v. State Farm Mut. Auto. Ins. Co.,* 487 F.3d 1042, 1047 (7th Cir. 2007) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Similarly, class certification would promote consistency of rulings and judgments, giving all parties the benefit of finality. Given this, it is no surprise that courts in TCPA litigation regularly find the superiority prong met. *Hinman*, 545 F. Supp. 2d at 807 ("It also appears that resolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources."); *Chapman v. Wagener Equities, Inc.*, 2014 WL 540250, at *16 (N.D. Ill. Feb. 11, 2014) (finding that with a TCPA class of approximately 10,000, "it is impossible to imagine individual lawsuits; disposition by class action is certainly, in this case, an efficient use of judicial resources.") Accordingly, the superiority requirement is satisfied as well.

## CONCLUSION

For the foregoing reasons, Plaintiff Kevin Sterk respectfully request that the Court (i) grant his Motion for Class Certification; (ii) appoint him as Class Representative; (iii) appoint Jay Edelson, Rafey S. Balabanian, Ari J. Scharg and John C. Ochoa of Edelson PC as Class Counsel; and, (iv) provide all other relief that the Court deems equitable and just.


Respectfully submitted,

**KEVIN STERK**, individually and on behalf of all others similarly situated,

Dated: April 8, 2015

By: /s/ John C. Ochoa
One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff Kevin Sterk and the putative Class*

## CERTIFICATE OF SERVICE

I, John C. Ochoa, an attorney, certify that on May 8, 2015, I served the above and foregoing ***Plaintiff Kevin Sterk's Renewed Motion and Memorandum in Support of Class Certification***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system on this the 8th day of May 2015.


         _____/s/ John C. Ochoa_____
            John C. Ochoa